**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| VORTEX PATHWAY LLC, a Texas limited liability corporation, | § § § | |
| *Plaintiff,* | § § | Civil Action No. 2:16-cv-956 |
| v. | § § | Jury Trial Demanded |
| CHUNGHWA TELECOM GLOBAL, INC., a California corporation, | § § | |
| *Defendant.* | § § | |

## COMPLAINT FOR PATENT INFRINGEMENT

## JURY TRIAL DEMANDED

Plaintiff VORTEX PATHWAY LLC, by and through undersigned counsel, brings this civil action for patent infringement against Defendant, CHUNGHWA TELECOM GLOBAL, INC, and alleges as follows:

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to enjoin and obtain damages resulting from Defendants' unauthorized importation for sale, manufacture, use, offer to sell and sale in the United States of a USB cryptographic token that infringes one or more claims of United States Patent No. 6,212,635 (the "'635 Patent") entitled "Network Security System Allowing Access and Modification to a Security Subsystem After Initial Installation When a Master Token is in Place."

**PARTIES, JURISDICTION AND VENUE**

2.      Plaintiff Vortex Pathway LLC, ("Vortex") is a Texas Limited Liability Corporation with its principal place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701-2509.

3.      Defendant CHUNGHWA TELECOM GLOBAL, INC ("CHT") is a California corporation with its principal place of business at 2107 N. First St, Suite 580, San Jose, CA 95131. CHT can be served via their registered agent MINGHSEIN JOE YANG at 2107 N. First St, Suite 580, San Jose, CA 95131.

4.      This Court has personal jurisdiction over CHT because CHT has committed, and continues to commit, acts of infringement in the state of Texas, conducted business in the state of Texas, and/or has engaged in continuous and systematic activities in the state of Texas.

5.      This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §1338(a) under the Patent Laws of the United States.

6.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. §1400(b) and 28 U.S.C. §1391 (b) because CHT has committed acts of infringement within this judicial district and division and CHT is subject to personal jurisdiction in this judicial district.

**THE PATENT-IN-SUIT**

7.      Prior to July 18, 1997, David C. Reardon invented a novel and non-obvious method and system for providing security to computers in compliance with the FIPS 140-2 standards.  The method and system relies on an improved, novel and non-obvious use of asynchronous encryption keys, also known as public/private key pairs which may be implemented through the use of a USB "token" to block unauthorized access to a computer memory, and/or to block unauthorized access to various computers that are networked together.

**COMPLAINT FOR PATENT INFRINGEMENT**                                    **Page 2**

8.     In general, non-legal terms, the '635 Patent relates to a method and system for providing security for a computer by implementing an additional level of user control over a computer through a security gateway that is positioned upstream of the computer's CPU. The security gateway functions to block unauthorized access to the CPU which operates programs, and to block access to the peripheral devices that are directed by the CPU to implement programs or retrieve and store data. Because the additional level of security control is independent of the CPU, the invention makes it impossible for any program run by the user to cross over into restricted memory areas to read, alter, or erase data.

9.     Reardon applied for and obtained United States Patent No. 6,212,635 entitled "Network Security System Allowing Access and Modification to a Security Subsystem After Initial Installation When a Master Token is in Place" which was duly and legally issued on April 3, 2001 (the '635 Patent).  A true and correct copy of the '635 Patent is attached as Exhibit 1.

10.    Vortex owns all substantial rights in and to the '635 patent.

### DEFENDANT'S INFRINGEMENT

11.    In 2001, the National Institute of Standards and Technology published the Federal Information Processing Standards Publication 140-2 ("FIPS 140-2"). This standard involves security requirements for cryptographic modules, which protect sensitive information stored on computers.  As will be pointed out in greater detail below, Defendant CHT advertises that its StarSign Crypto USB Token is certified as complying with FIPS 140-2 level 3 Certification.

12.    Defendant CHT manufactures and sells a USB Cryptographic Token called "HiKey PKI Token" (the "Accused Product").

13.    The Accused Product is employed to provide security for computers via a removable USB stick in compliance with the FIPS 140-2 Level 3 Certification Standards.

14.     Defendant CHT uses the Accused Product at least during the development, internal testing, and maintenance of the Accused Product by having CHT employees, or other entities under CHT's control, perform the steps in at least claim 1 of the '635 Patent as illustrated in Exhibit 2.

15.     Defendant CHT makes, offers to sell and sells the Accused Product for use in practicing the method for providing computer security claimed in at least claim 1 of the '635 Patent in conjunction with a removable USB token.

16.     On information and belief, at least one customer of CHT uses the Accused Product to perform the steps in at least claim 1 of the '635 Patent as illustrated in Exhibit 2.

17.     Vortex has retained the undersigned attorneys and has agreed to pay them a reasonable fee.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,212,635

18.     Plaintiff repeats and re-alleges paragraphs 1 through 17 above as fully and completely as if set forth herein verbatim.

19.     Claim 1 of the '635 Patent includes a preamble or introductory portion followed by five steps (a) through (e).

20.     The preamble of Claim 1 of the '635 Patent states: A method for providing security for a computer comprised of a central processing unit, peripheral and file storage devices, at least one of which can be used as a token access device that can read and write files to removable storage media suitable for use as a token, a computer operating system, and a CPU independent security subsystem which includes a security control unit and programmable auxiliary memory".

**COMPLAINT FOR PATENT INFRINGEMENT**                                    **Page 4**

21.     The Accused Product is used in a method as described in Paragraph 20 hereof via a USB Token removably connected to a computer that includes the ability to read and write files to removable storage media suitable for use as a USB Token where the computer system includes a security control unit and a programmable auxiliary memory thus corresponding to the preamble of Claim 1 as explained in greater detail on pages 1 – 6 of Exhibit 2.

22.     Step (a) of Claim 1 of the '635 Patent states: "generating with said security control unit a security subsystem key pair comprised of a public key and a private key;"

23.     The Accused Product as used with the security control unit generates a key pair, namely a public key and a private key as described in Paragraph 22 hereof, thus corresponding to Step (a) of Claim 1 of the '635 Patent as explained in greater detail on pages 6 -8 of Exhibit 2.

24.     Step (b) of Claim 1 of the '635 Patent states: "storing said private key data in a memory location which is under the control of the said security subsystem;"

25.     The private key data is stored in a memory location that is under the control of the security subsystem and the Accused Product, as described in Paragraph 24 hereof, thus corresponding to Step (b) of Claim 1 of the '635 Patent as explained in greater detail on pages 8-9 of Exhibit 2.

26.     Step (c) of Claim 1 of the '635 Patent states: "creating with said security - subsystem a key file encrypted with said public key and writing the key file to a master token by means of said token access device, such that said encrypted key file can only be decrypted and authenticated by the security subsystem using its corresponding private key;"

27.     The Accused Product together with the security subsystem creates the key file encrypted with the public key and writes that key file to a master token via a token access device so that the encrypted key file may only be decrypted and authenticated by the security subsystem

using its corresponding private key, as described in Paragraph 26 hereof, thus corresponding to Step (c) of Claim 1 of the '635 Patent as explained in greater detail on pages 9-11 of Exhibit 2.

28.     Step (d) of Claim 1 of the '635 Patent states: "allowing access to said security subsystem after initial installation and setup by said computer operating system for installation and modification of security requirements only when said master token is placed into an appropriate file storage device and said encrypted key file has been authenticated by the security subsystem;"

29.     After initialization or installation, access to the security subsystem is precluded unless the master token is in the proper location and the encrypted file is authenticated by that security subsystem, as described in Paragraph 28 hereof, thus corresponding to Step (d) of Claim 1 of the '635 Patent as explained in greater detail on pages 11-16 of Exhibit 2.

30.     Step (e) of Claim 1 of the '635 Patent states: "denying file and peripheral device access requests by the central processing unit when the security requirements are not satisfied."

31.     If and when the central processing unit seeks access to files and or peripheral devices, the Accused Product functions to deny access if the security requirements of the method and system are not met, as described in Paragraph 30 hereof, thus corresponding to Step (e) of Claim 1 of the '635 Patent as explained in greater detail on pages 16-17 of Exhibit 2.

32.     Since at least 2012, Defendant CHT has make, used and sold the Accused Product, the use involving at least testing the Accused Product in accordance with the steps described above in Paragraphs 19-31 hereof.

33.     The use of the Accused Product as described in Paragraphs 19-32 hereof infringes at least Claim 1 of the '635 Patent either literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271(a).

**COMPLAINT FOR PATENT INFRINGEMENT**                                    **Page 6**

34.     The activities of CHT as set forth in this Count I have been without license, permission or authorization from Plaintiff.

35.     The activities of CHT as set forth in this Count I have been and continue to be to the injury and detriment of Plaintiff and irreparable harm to Plaintiff.

**WHEREFORE, PLAINTIFF PRAYS:**

A.     For judgment that CHT has infringed the '635 Patent;

B.     For an accounting and an award of damages sufficient to compensate Plaintiff for the infringement but in no event less than a reasonable royalty;

C.     For an award of costs; and

D.     For such other and further relief as to the Court may appear just and reasonable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated:  August 26, 2016

Respectfully submitted,

**SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP, LLC**

*/s/ Joel B. Rothman*
Joel B. Rothman
Florida Bar Number 98220
Joel.rothman@sriplaw.com
Jerold I. Schneider
Florida Bar Number 26975
Jerold.schneider@sriplaw.com

4651 North Federal Highway
Boca Raton, Florida  33431
561.404.4350 – Telephone
561.404.4353 – Facsimile

**BUETHER JOE & CARPENTER, LLC**

By:

Kenneth P. Kula
State Bar No. 24004749
Ken.Kula@BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
214.730.5660 – Telephone
972.707.1248 – Facsimile

**ATTORNEYS FOR PLAINTIFF VORTEX PATHWAY LLC**